UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT MILLER,

                            Plaintiff,
                                                          1:19-CV-1474
v.                                                        (GTS/DJS)

HAREDIM CONSULTING INC.; and DOES 1-10,

                            Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

NGO LAW PRACTICE                                RAYMINH L. NGO, ESQ.
  Counsel for Plaintiff
715 East 3900 South, Suite 209
Salt Lake City, UT 84107

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this copyright infringement action filed by Robert Miller

("Plaintiff") against Haredim Consulting Inc., and unnamed defendants ("Defendants"), is

Plaintiff's motion for default judgment pursuant to Fed. R. Civ. P. 55(b)(2).  (Dkt. No. 14.)  For

the reasons stated below, Plaintiff's motion is granted in part and denied in part.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Complaint

Generally, in his Complaint, Plaintiff asserts two claims: (1) a claim of copyright

infringement in violation of 17 U.S.C. § 101 based on Defendants' willful use of Plaintiff's

copyrighted photograph on their website for their own commercial benefit; and (2) a claim of

falsification, removal, or alteration of copyright management information in violation of 17

U.S.C. § 1202 based on Defendants' removal of a caption crediting Plaintiff for the copyrighted

photograph when Defendant Haredim placed that photograph on its website.  (Dkt. No. 1 [Pl.'s

Compl.].)  As relief, Plaintiff seeks statutory and/or actual damages, general and special

damages, costs and attorneys' fees, and an injunction preventing Defendants from further

infringement of Plaintiff's copyrighted works.  (*Id.*)

> **B.    Relevant Procedural History**

On November 26, 2019, Plaintiff filed his Complaint.  (Dkt. No. 1.)  On January 14,

2020, Plaintiff filed an affidavit of service indicating that he had served Defendant Haredim on

December 18, 2019.  (Dkt. No. 6.)  On January 15, 2019, Plaintiff requested that the Clerk enter

Defendant Haredim's default pursuant to Fed. R. Civ. P. 55(a) and Local Rule 55.1 of the

District's Local Rules of Practice, which the Clerk did on January 16, 2019.  (Dkt. Nos. 7, 8.)

On February 17, 2020, Plaintiff filed the current motion for default judgment.  (Dkt. No. 11.)

> **C.    Plaintiff's Memorandum of Law and Defendant Haredim's Failure to
> Respond**

In his memorandum of law, Plaintiff argues that he is entitled to default judgment.  (Dkt.

No. 11, Attach. 1 [Pl.'s Mem. of Law].)  More specifically, Plaintiff argues as follows: (a)

Defendant Haredim has not filed a timely answer or made any attempt to defend in this action;

(b) Defendant Haredim's default constitutes an admission of the allegations in the Complaint; (c)

Plaintiff's copyright on the relevant photograph is presumptively valid because it is registered

with the United States Copyright Office; (d) Plaintiff adequately alleged in his Complaint that

Defendant Haredim violated his copyright by reproducing and distributing his photograph

without authorization by putting that photograph on its website; and (e) Plaintiff adequately

alleged in his Complaint that Defendant Haredim violated the Digital Millennium Copyright Act ("DMCA") by removing the credit caption on the photograph when it placed the photograph on its website. (*Id.* at 3-5.) Plaintiff also argues that, as to damages, he is entitled to recover statutory damages pursuant to 17 U.S.C. §§ 504(c) and 1203(c)(3) related to Defendant Haredim's willful conduct, as well as litigation costs, attorneys' fees, and a permanent injunction pursuant to 17 U.S.C. § 502(a). (*Id.*)

As of the date of this Decision and Order, Defendant Haredim has not responded to either Plaintiff's Complaint or Plaintiff's motion for default judgment. (*See generally,* Docket Sheet.)

## II.   RELEVANT LEGAL STANDARD

"Federal Rule of Civil Procedure 55 provides a two-step process that the Court must follow before it may enter a default judgment against a defendant." *Robertson v. Doe*, 05-CV-7046, 2008 WL 2519894, at *3 (S.D.N.Y. June 19, 2008). "First, under Rule 55(a), when a party fails to 'plead or otherwise defend . . . the clerk must enter the party's default.'" *Robertson*, 2008 WL 2519894, at *3 (quoting Fed. R. Civ. P. 55[a]). "Second, pursuant to Rule 55(b)(2), the party seeking default judgment is required to present its application for entry of judgment to the court." *Id*. "Notice of the application must be sent to the defaulting party so that it has an opportunity to show cause why the court should not enter a default judgment." *Id*. (citing Fed. R. Civ. P. 55[b][2]). "When an action presents more than one claim for relief . . . , the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties . . . if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b).

Pursuant to Second Circuit law, when determining whether to grant a default judgment, the Court must consider three factors: (1) whether the defendant's default was willful; (2)

3

whether the defendant has a meritorious defense to the Government's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment. *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). "An unexcused or unexplained failure to provide an answer to the Complaint will itself demonstrate willfulness," as does failing to respond to both a complaint and a subsequent motion for default judgment. *United States v. Silverman*, 15-CV-0022, 2017 WL 745732, at *3 (E.D.N.Y. Feb. 3, 2017) (citing *S.E.C. v. McNulty*, 137 F.3d 732, 738-39 [2d Cir. 1998]; *Indymac Bank v. Nat'l Settlement Agency, Inc.*, 07-CV-6865, 2007 WL 4468652, at *1 [S.D.N.Y. Dec. 20, 2007]).

When a court considers a motion for the entry of a default judgment, it must "accept[ ] as true all of the factual allegations of the complaint . . . ." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (citations omitted). "However, the court cannot construe the damages alleged in the complaint as true." *Eng'rs Joint Welfare, Pension, Supplemental Unemployment Benefit and Training Funds v. Catone Constr. Co., Inc.*, 08-CV-1048, 2009 WL 4730700, at *2 (N.D.N.Y. Dec. 4, 2009) (Scullin, J.) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 [2d Cir. 1999] [citations omitted]). "Rather, the court must 'conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Eng'rs Joint Welfare, Pension, Supplemental Unemployment Benefit and Training Funds*, 2009 WL 4730700, at *2 (quoting *Alcantara*, 183 F.3d at 155 [citation omitted]). This inquiry "involves two tasks: [1] determining the proper rule for calculating damages on such a claim, and [2] assessing plaintiff's evidence supporting the damages to be determined under this rule." *Alcantara*, 183 F.3d at 155. Finally, in calculating damages, the court "need not agree that the alleged facts constitute a valid

4

cause of action . . . ." *Au Bon Pain*, 653 F.2d at 65 (citation omitted).

Under N.D.N.Y. L.R. 55.2(a), when requesting an entry of default judgment from the Clerk of the Court, the moving party must submit (a) the Clerk's certificate of entry of default, (b) a statement showing the principal amount due (not to exceed the amount demanded in the Complaint and giving credit for any payments with the dates of payments), (c) a computation of the interest to the day of judgment, (d) a per diem rate of interest, (e) the costs and taxable disbursements claimed, and (f) an affidavit of the moving party or the party's attorney.  N.D.N.Y. L.R. 55.2(a).  The appended affidavit must show that (a) the party against whom judgment is sought is not an infant or incompetent person, (b) the party against whom judgment is sought is not in military service, (c) the party against whom judgment is sought has defaulted in appearance in the action, (d) service was properly effected under Fed. R. Civ. P. 4, (e) the amount shown in the statement is justly due and owing and no part has been paid except as set forth in the party's other statement, and (f) disbursements sought to be taxed have been made in the action or will necessarily be made or incurred.  *Id.*

Under N.D.N.Y. L.R. 55.2(b), when moving for an entry of default judgment from the Court, the moving party must submit (a) the Clerk's certificate of entry of default, (b) a proposed form of default judgment, (c) a copy of the pleading to which no response has been made, and (d) an affidavit of the moving party or its attorney setting forth the facts required by N.D.N.Y. L.R. 55.2(a).  N.D.N.Y. L.R. 55.2(b).

## III.   ANALYSIS

After carefully considering whether Plaintiff is entitled to an entry of default judgment, the Court answers this question in the affirmative for the reasons stated in Plaintiff's

memorandum of law.  (Dkt. No. 11 [Pl.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

As an initial matter, the Court finds that Plaintiff has sufficiently shown that the Complaint, when taken as true, establishes liability.  As to Plaintiff's claim of copyright infringement, "[i]n a copyright infringement case, the plaintiff must show: (i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work."  *Sohm v. Scholastic, Inc.*, 950 F.3d 39, 48 (2d Cir. 2020).  In his Complaint, Plaintiff alleged that he registered the relevant photograph with the Copyright Office (registration number VA0002083407).  (Dkt. No. 1, at ¶ 18 [Pl.'s Compl.].)  Plaintiff is correct that "[a] certificate of registration from the United States Register of Copyrights constitutes prima facie evidence of the valid ownership of a copyright."  *PaySys Int'l, Inc. v. Atos Se, Worldline SA, Atos IT Servs. Ltd.*, 226 F. Supp. 3d 206, 215 (S.D.N.Y. 2016) (quoting *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 98 [2d Cir. 1999]).  Because there is no indication of any facts that would cast doubt on the validity of Plaintiff's copyright, Plaintiff has alleged facts to plausibly suggest that he is the copyright owner of the relevant photograph.

As to whether Defendant Haredim engaged in unauthorized copying of the photograph, Plaintiff alleged that Defendant Haredim took the photograph from an online article in the New York Times and used it on its own website without authorization.  (Dkt. No. 1.)  Section 107 of Title 17 of the United States Code affords to the owner of a copyright the exclusive rights to do and authorize the following: (a) reproduce the copyrighted work; (b) prepare derivative works based on the copyrighted work; (c) distribute copies of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; (d) perform the work publicly; or

6

(e) display the copyrighted work publicly.  17 U.S.C. § 106.  Here, Defendant Haredim at the very least displayed the copyrighted photograph publicly by placing the photograph on its website for the public to see.  *See* 17 U.S.C. § 101 (stating that to display a work means "to show a copy of it, either directly or by means of a slide, television image, or any other device or process or, in the case of a motion picture or other audiovisual work, to show individual images nonsequentially").  Plaintiff alleges that he never authorized Defendant Haredim to use the copyrighted photograph in any manner.  (Dkt. No. 1, at ¶ 24 [Pl.'s Compl.].)  Plaintiff has therefore sufficiently alleged that Defendant Haredim infringed on his valid copyright.

As to Plaintiff's claim under the DMCA, such a claim arises when "a party 'without the authority of the copyright owner or the law, intentionally remove[s] or alter[s] any copyright management information.'" *Jerstad v. New York Vintners LLC*, 18-CV-10470, 2019 WL 6769431, at *4 (S.D.N.Y. Dec. 12, 2019) (quoting 17 U.S.C. § 1202[b]), report-recommendation adopted by 2020 WL 58237 (S.D.N.Y. Jan. 6, 2020).  "Copyright management information includes identifying information of the work, identifying information of the author, and identifying information of the copyright holder." *Jerstad*, 2019 WL 6769431, at *4 (citing 17 U.S.C. § 1202[c]).  The identifying information need not be present on a photograph or in a photograph's metadata to constitute copyright management information.  *See Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 377-78 (S.D.N.Y. 2019) (noting that courts have found that "gutter credits" constitute copyright management information under the DMCA), *aff'd*, 2020 WL 4690071 (2d Cir. Aug. 13, 2020).  Because Plaintiff has alleged facts that Defendant Haredim removed the credit caption that was included with the original authorized use of the photograph when Defendant Haredim used the photograph on its own website, Plaintiff has stated a

sufficient claim under the DMCA for the purposes of this motion.  *See Jerstad*, 2019 WL 6769431, at *4 (finding that the plaintiff sufficiently pled a DMCA claim by alleging that the defendant reproduced plaintiff's copyrighted photograph and removed the authorship credit that was initially listed with that photograph).

The Court also finds that there is nothing to suggest that Defendant Haredim would have a meritorious defense to Plaintiff's claims.  *See Broadcast Music, Inc. v. Buffalo Wing Joint & Pub, LLC*, 431 F. Supp. 3d 147, 153 (W.D.N.Y. 2019) ("Where a defendant fails to answer the complaint, a court is unable to make a determination whether the defendant has a meritorious defense to the plaintiff's claims, which circumstance weighs in favor of granting a default judgment.").  Similarly, there is nothing to suggest that Defendant Haredim's failure to defend this action is anything but willful, particularly given Plaintiff's allegations and Plaintiff's counsel's assertions that multiple attempts were made to get Defendant Haredim to remove the copyrighted image before suit was filed, and that counsel made further attempts to contact Defendant Haredim after service of the Complaint, but did not receive a response from Defendant Haredim.  (Dkt. No. 11, Attach. 2, at ¶¶ 6-14 [Ngo Decl.].)  As a result, the Court finds that Plaintiff has sufficiently shown that Defendant Haredim is liable for copyright infringement and altering copyright management information.

The Court also finds that Plaintiff has established entitlement to the amount of damages requested, with the exceptions noted below.  In his declaration, Attorney Ngo asserts that Plaintiff is entitled to the following damages: (a) $16,000 in statutory damages (which equates to approximately five times the licensing fee for online use of Plaintiff's photograph, plus $7,500 for the DMCA violation); (b) $1,825 in attorneys' fees (comprised of 4.5 hours by Attorney Ngo

8

at $350 per hour and 2 hours by a paralegal at $125 per hour); and (c) $520 in costs (comprised of $400 for the filing fee and $120 for service of process). (Dkt. No. 11, Attach. 2 [Ngo Decl].)

As to the request for statutory damages, the Copyright Act permits a copyright holder to recover either (a) actual damages and any additional profits of the infringer, or (b) statutory damages. 17 U.S.C. § 504(a). "[T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action . . . in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). Enhanced statutory damages of up to $150,000 are proper "where the copyright owner has sustained the burden of proving, and the court has found, that the defendant's infringement was committed willfully." *McGucken v. Newsweek LLC*, 19-CV-9617, 2020 WL 2836427, at *10 (S.D.N.Y. June 1, 2020) (citing 17 U.S.C. § 504[c][2]). Here, the Court finds that Plaintiff has alleged facts sufficiently suggesting that Defendant Haredim's conduct was willful, in that Plaintiff alleged that (a) Defendant Haredim continued to infringe even after Plaintiff's counsel contacted it through a cease and desist letter and various other methods informing it that it did not have permission to use the copyrighted photograph, and (b) Defendant Haredim changed its website address after being contacted by counsel in an attempt to hide its infringement. (Dkt. No. 1, at ¶¶ 26-29 [Pl.'s Compl.].) *See McGucken*, 2020 WL 2836427, at *10 (finding the plaintiff's allegations that he sent a cease and desist letter to the defendant and that defendant continued to infringe in spite of the letter was sufficient to raise a plausible inference that the defendant acted willfully).

Similarly, the Copyright Act allows a Court to grant either actual damages or statutory damages for violations of 17 U.S.C. § 1202. 17 U.S.C. § 1203(c). "At any time before final

judgment is entered, a complaining party may elect to recover an award of statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000." 17 U.S.C. § 1203(c)(3)(B). The Court can reduce or remit any award under 17 U.S.C. § 1203(c) where the violator sustains the burden of proving that is "was not aware and had no reason to believe that its acts constituted a violation." 17 U.S.C. § 1203(c)(5)(A).

Regardless of any entitlement to enhanced statutory penalties on his infringement claim, Plaintiff seeks $8,500 in connection with the infringement.[1] The Court finds that this amount to be just considering Defendant Haredim's alleged refusal to remove the copyrighted photograph from its website despite numerous pre-litigation efforts by Plaintiff to get him to do so and the evident need to deter Defendant Haredim from similar conduct (against Plaintiff or others) in the future. *See Reilly v. Commerce*,15-CV-5118, 2016 WL 6837895, at *8 (S.D.N.Y. Oct. 31, 2016) (noting that factors to consider when determining the appropriate amount of statutory damages include [a] the expenses saved and profits earned by the infringer, [b] the revenues lost by the plaintiff, [c] the value of the copyright, [d] the deterrent effect on those other than the infringer, [e] the willfulness of the infringer's conduct, [f] whether the infringer cooperated in providing records to assess the value of the material infringed, and [g] the likelihood the award will discourage the defendant from repeating its infringement); *Mango*, 356 F. Supp. 3d at 374-75 (noting that "courts in this Circuit commonly award, in cases of non-innocent infringement, statutory damages of between three and five times the cost of the licensing fees the defendant would have paid").

Additionally, the Court finds that Plaintiff's request for statutory damages related to the

---

[1]     This equates to an approximate license fee of $1,700 for use of the photograph.

removal of the caption credit on the copyrighted photograph should be granted.  However, despite the fact that Plaintiff's allegations suggest Defendant Haredim was actively trying to conceal its infringement to avoid liability, the Court finds that a sum of $5,000 is more reasonable and more consistent with awards granted by courts within the Second Circuit for similar willful conduct.  *See Mango*, 356 F. Supp. 3d at 378 (awarding $5,000 per infringement in light of the defendant's willful conduct in altering and removing the credit caption from the copyrighted photograph) (collecting cases); *Reilly*, 2016 WL 6837895, at *12 (granting $5,000 per violation for willful conduct in altering or removing the copyright management information from copyrighted photograph).  There is no indication that Defendant Haredim was unaware that such removal was a violation of the DMCA, and, combined with its actions already discussed (i.e., refusing to respond to Plaintiff's cease and desist demands and changing its domain name), the facts alleged by Plaintiff sufficiently suggest that Defendant Haredim was aware that removing the attribution was unlawful.

As to attorneys' fees, the Copyright Act allows for the recovery of full costs (including attorneys' fees for actions under 17 U.S.C. § 504, and reasonable attorneys' fees to the prevailing party under the DMCA.  *Sheldon v. Plot Commerce*, 15-CV-5885, 2016 WL 5107072, at *17-18 (E.D.N.Y. Aug. 26, 2016).  In particular, "a willful infringement supports an attorneys' fees award."  *Realsongs, Universal Music Corp. v. 3A N. Park Ave. Rest Corp.*, 749 F. Supp. 2d 81, 87 (E.D.N.Y. 2010) (citing *Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 289 [2d Cir. 1999]).

The Court notes that Plaintiff's submission related to attorneys' fees does not comply with the full letter of the law of the Second Circuit, which requires that "[a] fee movant must submit contemporaneous time records that specify, for each attorney, the date, the hours

expended, and the nature of the work done." *Broadcast Music, Inc.*, 431 F. Supp. 3d at 156.  In

his declaration, Attorney Ngo indicated that he spent 4.5 hours on the matter, with one hour

attributed to drafting the Complaint, half an hour attributed to the entry of default, and three

hours attributed to drafting the motion for default judgment.  (Dkt. No. 11, Attach. 2, at ¶ 18

[Ngo Decl.].)  Attorney Ngo did not provide information about the dates on which these tasks

were performed; nor did he provide any information about the timing or nature of the two hours

related to paralegal work.  In addition, Attorney Ngo (who did not describe his experience as a

practitioner in this field of law or any field of law) did not submit any contemporaneous time

records along with his declaration, or affirm in his declaration that the summary in his

declaration is accurate and based on contemporaneous time records. *See Laberbera v. ASTC*

*Laboratories Inc.*, 752 F. Supp. 2d 263, 277 (E.D.N.Y. 2010) (noting that "[a] party seeking

attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed,

and contemporaneous time records," and that, "[i]n lieu of contemporaneous time records, an

applicant may submit summaries accompanied by affidavits stating that the summaries are

accurate and based on contemporaneous time records").  As a result, although the Court finds

that attorneys' fees are proper in this case, it cannot approve the amount requested by Plaintiff on

the evidence provided.  *See New York City Dist. Council of Carpenters Pension Fund v. Shroid*

*Constr.*, 07-CV-13727, 2007 WL 4145460, at *3 (S.D.N.Y. Nov. 13, 2007) (declining to award

attorneys' fees where the attorney affidavits submitted did not include or even reference

contemporaneous time records).  Additionally, the Court finds that any attorneys' fees that

Plaintiff might be granted in the future should be subject to a rate of $300 per hour for Attorney

Ngo and $90 per hour for paralegal work, as those rates are more in line with the prevailing rates

in the Northern District of New York.  *See, e.g., Premium Sports, Inc. v. Nichols*, 17-CV-0741, 2018 WL 3574870, at *9 (N.D.N.Y. July 25, 2018) (Suddaby, C.J.).  The Court therefore will allow Plaintiff 14 days from the date of this Decision and Order to submit an affidavit and contemporaneous time records in support of his application for attorneys' fees that complies with the requirements of the Second Circuit.

As to costs, the Court finds that the requested amounts of $400 for the filing fee and $120 for service of process costs are reasonable.

Lastly, as to Plaintiff's request for a permanent injunction, this Court has required that a plaintiff establish the following four elements to be entitled to such relief: (1) that he has suffered an irreparable injury; (2) that the remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  *Broadcast Music, Inc. v. Wexford INR LLC*, 12-CV-1253, 2014 WL 4626454, at *9 (N.D.N.Y. Sept. 15, 2014) (Suddaby, J.)

Here, the Court finds that Plaintiff has not alleged facts that sufficiently show he will suffer irreparable harm if the injunction is not granted.  In the context of copyright claims, irreparable harm is usually found based on lost sales that are "difficult if not impossible to measure," where there is a likelihood of confusion, or where the plaintiff incurs a loss that he should not expected to suffer, such as a diminishment of reputation.  *Barcroft Media, Ltd. v. Coed Media Group, LLC*, 297 F. Supp. 3d 339, 355-56 (S.D.N.Y. 2017); *Beastie Boys v. Monster Energy Co.*, 87 F. Supp. 3d 672, 679 (S.D.N.Y. Feb. 20, 2015).  Plaintiff has not alleged any facts suggesting that Defendant Haredim's use of Plaintiff's photograph has caused him to

13

lose sales of the photograph to other outlets, that his reputation has suffered as a result of his photograph being on Defendant Haredim's website, that there is any kind of consumer confusion resulting from the use of his photograph on Defendant Haredim's website, or that Defendant Haredim's unauthorized use and removal of the copyright information in any way devalued the marketability of the photograph.  Thus, the only apparent harm caused by Defendant Haredim's conduct is the loss of the licensing fee that Plaintiff would have otherwise received had Defendant Haredim followed the law.  Notably, Plaintiff does not allege facts to suggest that, if an injunction is denied, Defendant Haredim will commit new acts of infringement in the future; rather, Plaintiff alleges only that the current act of infringement (for which he is recovering monetary damages) will continue because the photograph will remain on the website.

Nor is the Court convinced that the harm that has been suffered in this case cannot be adequately remedied by monetary damages.  Because Defendant Haredim is not engaging in activities such selling Plaintiff's photograph or products containing Plaintiff's photograph, but rather merely used the photograph on its website, the extent of damages are based on a single use (i.e., the licensing fee that Defendant Haredim would have had to pay to use the photograph on its website in this manner), and thus very easily calculated in terms of monetary value.  In particular, Plaintiff has not alleged any facts to suggest that Defendant Haredim has used or will use the copyrighted photograph in a different context; should Defendant Haredim do so, an injunction may be appropriate at a future time.  However, based on the facts of this case, Plaintiff has not shown an irreparable harm that only an injunction could remedy.  Although the Court recognizes that "an injunction should be granted if denial would amount to a forced license to use the creative work of another," the Second Circuit has made clear that injunctive relief to enforce

14

a copyright owner's rights is not compelled in all cases. *Silverstein v. Penguin Putnam, Inc.*, 368 F.3d 77, 84 (2d Cir. 2004). Plaintiff simply has not alleged that there remains any harm for an injunction to address after the provision of monetary damages. For these reasons, the Court declines to issue a permanent injunction.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion (Dkt. No. 11) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that the Clerk of the Court is directed to enter a default judgment in Plaintiff's favor against Defendant in the amount of **FOURTEEN THOUSAND AND TWENTY DOLLARS ($14,020)**[2], plus post-judgment interest pursuant to 28 U.S.C. § 1961; and it is further

**ORDERED** that Plaintiff has **FOURTEEN (14) days** from the date of this Decision and Order to submit further supporting documents related to his request for attorneys' fees at the reduced hourly rate described above in this Decision and Order.

Date:   August 26, 2020
        Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge

---

[2]     This amount consists of the following: (1) $8,500.00 in statutory damages for infringement; (2) $5,000.00 in statutory damages under the DMCA; and (3) $520.00 in court costs.

15